# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

> Plaintiff,

vs.                                                                                   No. CR 06-2168  JB

FELSITTA ERIACHO,

> Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Downward Departure Motion, filed August 10, 2007 (Doc. 63).  The Court began the sentencing hearing on September 25, 2007, and continued it to October 3, 2007.  The primary issues are: (i) whether the Court should grant Defendant Felsitta Eriacho a downward departure based on Family Ties and Responsibilities pursuant to U.S.S.G. § 5H1.6; (ii) whether the victim's alleged wrongful conduct contributed so significantly to provoking the offense behavior that the Court should reduce the sentence below the guideline range pursuant to U.S.S.G. § 5K2.10; and (iii) whether the Court should vary from the advisory guideline sentence pursuant to United States v. Booker, 543 U.S. 200 (2005).  For the reasons stated at the sentencing hearing, and for reasons consistent with those already stated, the Court denies Eriacho's requests for downward departures.  Because the Court concludes that it should apply a 7-level enhancement because of victim Daral Jake's permanent eye injury, and because the Court concludes that the resulting guideline is not reasonable for Eriacho under the circumstances of this case, the Court will grant Eriacho's request for a variance.

## FACTUAL BACKGROUND

While there are certain factors in Eriacho's background and in her involvement on the night of the assault that arguably counsel for a lower sentence, the issue is whether those factors are significant enough to justify a departure or a variance.  While Eriacho plays an important role in her family, she remains a sister, not a mother, and her role as a big sister does not, alone, justify a downward departure.  And while Daral Jake did some things the night of the assault that were provocative, the Court does not conclude that his actions so contributed to the offense that the Court should depart on that basis.

### 1. **Eriacho's Background**.

Eriacho's parents were separated when she was nine years old.  See Pre-Sentence Report Investigating Report ("PSR") ¶ 59, at 16.  Eriacho and her siblings lived with her father.  See id. Eriacho is the oldest daughter and has four siblings.  See id.

Eriacho reports that, as the oldest daughter, she immediately took on a maternal role with her brothers and sisters after her parents' separation.  See Defendant's Sentencing Memorandum and Downward Departure Motion at 2 ("Defendant's Sentencing Memo."), filed August 10, 2007 (Doc. 63); PSR ¶ 61, at 17 (stating that Eriacho "has played a significant role in her younger siblings upbringing.").  Eriacho's father was and is employed as a firefighter.  See PSR ¶ 59, at 16.  This work  often involved extended absences from the house.  See Defendant's Sentencing Memo. at 2.

Eriacho reports that  younger siblings depend on her greatly.  See Defendant's Sentencing Memo. at 2; PSR ¶ 61, at 17.  Nevertheless, she is not the primary caretaker of her siblings or the sole financial provider of her siblings.   In addition, Eriacho moved to Las Cruces and to Albuquerque, New Mexico without her siblings, and lived away from her family for several months. See PSR ¶¶ 62, 71, 75, 76,  at 17-19.

Eriacho is a small young woman, standing only 5'3" and weighing 120 pounds.  See PSR ¶ 64, at 17.

### 2.     The Circumstances Surrounding the Assault.

Rita Jake, the mother of the victim, Daral Jake, stated that Eriacho has had a crush on her son since elementary school.  See PSR ¶ 18, at 6.  Rita Jake also stated that Eriacho had been to her home numerous times.  See id.  Eriacho knew the victim, Daral Jake, to be a violent person.  She believed him to be involved in a gang. See id. ¶ 27, at 8.  Carlando E.,[1] said that he and Eriacho had an altercation with  Daral Jake before this incident.  See id. ¶ 27, at 8.  Daral Jake told agents that Eriacho had been angry with him for years because he would not date her.  See id. ¶ 20, at 7.  He advised that Eriacho recently attempted to crawl in his bedroom window when she was drunk.  See id.

Eriacho told agents on September 21, 2006 that, at about 10:00 p.m., she bought a thirty pack of beer.  See id. ¶ 28, at 9.  Eriacho stated that she drank approximately fifteen beers.  See id.  At midnight, she and Derek W.,[2] decided to walk to the home of one of her friends.  See id. ¶ 29, at 9.

Rita Jake stated to agents that, early in the morning of September 10, 2006, she was awakened by dogs' barking.  See PSR ¶ 14, at 5-6.  When she looked outside her window, she observed two individuals running from the area of Daral Jake's car.  See id.  Rita Jake said that she went outside and noticed the car windows were broken.  See id.  Rita Jake stated that Daral Jake had also woken up and was walking down the road to look for the vehicles.  See id.

---

[1] Carlando E., although not a co-Defendant of Eriacho, is a juvenile who has been charged separately for his conduct arising out of this same incident.

[2] Derek W., although not a co-Defendant of Eriacho, is a juvenile who has been charged separately for his conduct arising out of this same incident.

-3-

Daral Jake reported to agents his first thought was that Eriacho and her friends had vandalized his car. See PSR ¶ 20, at 7. It was late at night when Daral Jake and his father attacked Eriacho on the street. See PSR ¶¶ 10, 29, at 5, 9. "The information is consistent with the fact the defendant was struck first by Daral J." PSR ¶ 98, at 22.

This offense involves an assault in which Daral Jake was permanently injured. Daral Jake lost his right eye as a result of being hit with a stick by Eriacho. See PSR ¶¶ 22, 35, at 7, 10. In addition, Eriacho's younger brother was also involved in the altercation. See PSR ¶¶ 27, 59-61 at 8,16-17.

## PROCEDURAL BACKGROUND

One of Eriacho's younger siblings has also been charged in the offense. See PSR ¶¶ 27, 59-61 at 8, 16-17. In the PSR, the United States Probation Officer stated in paragraph 46:

> Specific Offense Characteristic: Pursuant to U.S.S.G. § 2A2.2(b)(3)(B), if the victim sustained serious bodily injury, increase by five levels. In this case, the victim sustained a serious eye injury and lost his eye sight in his right eye. According to medical personnel, Daral's right eye was cut all the way through the protective covering of the eye and vitreous fluid was leaking out. The tear in the eye was repaired, but the damages was so serious that he was blind in that eye. In addition, Daral's injury may have been life threatening if the eye became infected and the infection moved to his brain. The injury was noted as permanently disfiguring. Lastly, the victim's eye was surgically removed on September 27, 2006. The United States Probation Office, believes the victim received permanent or life threatening injury and the defendant should be assessed a seven level increase; however, pursuant to the plea agreement, the parties agree the defendant is responsible for serious bodily injury. Therefore, a five level increase is assessed.

PSR ¶ 46, at 13. A total offense level of 19 and Criminal History Category I produces a guideline range of 30 to 37 months. See PSR ¶ 81, at 19.

At the initial sentencing hearing, Eriacho did not dispute anything in the PSR. See Tr. at 4:18-19 (Court & Katze). Accordingly, Eriacho conceded that Daral Jake had lost eye in the assault. See Tr. at 11:14-16 (Katze) (stating "I just got a report this morning that said his eye was

-4-

removed.").  In her co-Defendant's Sentencing Memorandum, co-Defendant Sherman White stated: "White does not dispute that the injury to Daral's right eye, which allegedly necessitated removal of that eye, is a serious and permanent injury as defined in the guidelines."  Defendant Sherman White's Sentencing Memorandum and Objection to Presentence Report,  at 9, filed August 6, 2007 (Doc. 62).   The Court then inquired how, given that there was no dispute that Daral Jake had lost his eye, it could, consistent with the Guidelines, fairly apply only a 5-level enhancement rather than a 7-level enhancement.   See Tr. at 13:12-22 (Court).

Eriacho argued that the case involved competent counsel and that the Court should accept the stipulation.  See id. at 17:16-20.  The Court reminded the parties that, regardless of their stipulations, the Court had an independent duty to make factual findings and apply the Guidelines as faithfully and correctly as possible.  See Tr. at 9:20-10:1 (Court).  Eriacho stated that, if the Court was serious about rejecting the parties' stipulation, and enhancing by 7-levels, she wanted a continuance to research whether the Court could do what it was suggesting.  See Tr. at 10:5-12 (Katze).  The Court noted that the parties' plea agreement expressly stated that "[t]he Defendant understands that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report."  Plea Agreement ¶ 10, at 5, filed May 9, 2007 (Doc. 51).  The Court stated that, to faithfully and accurately apply the Guidelines, it was inclined to think it had apply the 7-level enhancement.  See Tr. at 13:20-22 (Court).

The Court stated that, while it did not want to put the United States in a position of in any way violating the plea agreement, it wanted to know about what factual support it had for its stipulation.  The Assistant United States Attorney responded:

Your Honor, if the Court needs additional evidence to make any finding, I would not

> object, although I believe that -- Your Honor my position and this is just to be more
> clear if I wasn't before, I would ask the Court to certainly accept the
> recommendations outlined in the presentence report which follow the stipulations in
> the plea agreement that result in a sentence at total offense level 19 and criminal
> history category of I and a range of 30 to 37 months.  That is my position.  And
> nothing more than that.

Tr. at 14:7-15 (Gonzales).  The Court then, pursuant to Eriacho's request, continued the hearing as

to her.  See Tr. at 19:2-5 (Court).

Eriacho represents that her younger siblings have been having a hard time since she has been

detained.  See Defendant's Sentencing Memo. at 2.  Eriacho moves the Court for a downward

departure pursuant to U.S.S.G. § 5H1.6 and 5K2.10.  See Defendant's Sentencing Memo. at 1.  She

also seeks a variance under United States v. Booker and 18 U.S.C. § 3553(a).

At the continuation of the sentencing hearing on October 3, 2007, the Court concluded that

the 7-level enhancement is appropriate.  An offense level of 21 and Criminal History Category of

I gives an advisory guideline range of 37 to 46 months.

## RELEVANT LAW REGARDING DOWNWARD DEPARTURES AND VARIANCES

While the Supreme Court of the United State' decision in United States v. Booker has given

the sentencing court discretion that it did not have earlier, the sentencing court's first task remains

to accurately and correctly determine the advisory guideline sentence.  Thus, before the sentencing

court takes up a defendant's Booker arguments, the sentencing court must first determine whether

the defendant is entitled to downward departures.  The sentencing court may also use these same

departure factors in the Booker calculus, even if the court does not grant a downward departure.

### 1.      Family Ties and Responsibilities.

Pursuant to U.S.S.G. § 5H1.6 Family Ties and Responsibilities, family ties and

responsibilities are not ordinarily relevant in determining whether a sentence should be considered

-6-

outside the applicable guideline range and whether a departure may be warranted.  See U.S.S.G. §

5H1.6.  In extraordinary circumstances, however, the court has the authority to depart downward.

See United States v. Gauvin, 173 F.3d 798, 807 (10th Cir. 1999) (stating that a district court may

depart based on family circumstances "only if the factor is present to an exceptional degree or in

some other way makes the case different from the ordinary case where the factor is present." (citing

to Koon v. United States, 518 U.S. 81, 94 (1996)); United Sates v. Pena, 930 F.2d 1486, 1494-95

(10th Cir. 1991) (stating that a district court may depart downward from the guidelines "only if it

finds there exists mitigating circumstances of a kind, or to a degree, not adequately taken into

consideration by the sentencing commission in formulating the guidelines."); United States v.

Johnson, 964 F.2d 124, 128 (2nd Cir. 1992) (noting that "[e]xtraordinary circumstances, however,

are by their nature not capable of adequate consideration.  They therefore may constitute proper

grounds for departure.").  The requirement that the family circumstances be extraordinary does not

mean that they must be extra-extraordinary; they must only be outside the ordinary. See United

States v. Vidrickson, 998 F.2d 601, 602-603 (8th Cir. 1993) (recognizing that, "[o]rdinarily, family

ties are not relevant in determining whether to depart from the Guidelines sentencing range.

Nevertheless, the court may depart whenever there exists an aggravating or mitigating circumstance

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in

formulating the guidelines.") (internal citations and quotations omitted).

Application Note (A) for U.S.S.G. § 5H1.6 states: "In determining whether a departure is

warranted under this policy statement, the court shall consider the following non-exhaustive list of

circumstances: (i) The Seriousness of the Offense; (ii) The involvement of the offense, if any, of

members of the defendant's family; (iii) The danger, if any, to members of the defendant's family

as a result of the offense."  U.S.S.G. § 5H1.6, cmt. at 1(A).   Application Note B(ii) states that

departure may be warranted where the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.  See  U.S.S.G. § 5H1.6, cmt. at B(ii). For example, the fact that the defendant's family incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such a hardship or suffering is of a sort ordinarily incident to incarceration.

In United States v. Jones, 158 F.3d 492, 499 (10th Cir. 1998), the United States Court of Appeals for the Tenth Circuit found that the district court abused its discretion by departing downward from the Sentencing Guidelines in part because economic hardship incarceration would inflict upon the defendant's wife and children, as the wife was employed and capable of caring for the children.  In United States v. Reyes-Rodriguez, 344 F.3d 1071, 1073-74 (10th Cir. 2003), the Tenth Circuit found that a downward departure for extraordinary family circumstances was not warranted for a defendant convicted of illegal reentry, even though he had sent every other paycheck to his parents, who lived in extreme poverty in southern Mexico, and his mother had heart problems. The Tenth Circuit found that the support the defendant would be able to provide his parents after serving his sentence and after being deported to Mexico was not so specialized that only he could provide it.  See United States v. Pena, 930 F.2d 1486, 1495 (10th Cir. 1991)(upholding departure from guideline range of 27-33 months to five years probation with six months community treatment center based on family circumstances); United States v. Gauvin, 173 F.3d 798, 806-808 (10th Cir. 1999)(stating that, where defendant supported four young children and wife, worked fourteen hours a day, forty-four miles from home, and had no extended family to take custody of the children, departure of 3 levels to 37 months, making defendant eligible for shock incarceration, was warranted under § 5H1.6 to minimize the impact of the defendant's children).

The United States Court of Appeals for the Second Circuit in <u>United States v. Alba</u>, 933 F.2d 1117, 1122 (2nd Cir. 1991), noted the special situation of a close-knit family whose stability depended on the defendant's continued presence.   The Second Circuit let stand the sentencing court's finding that incarceration in accordance with the Guidelines might well result in the destruction of an otherwise strong family unit and the sentencing court's conclusion that these circumstances were sufficiently extraordinary in that case to support a downward departure.   <u>See</u> <u>United States v. Aguirre</u>, 214 F.3d 1122, 1127 (9th Cir. 2000)(affirming that it is within the district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8 year old son who's lost a father and would be losing a mother for a substantial period of time"); <u>United States v. Milikowsky</u>, 65 F.3d 4, 8 (2nd Cir. 1995)("Among the permissible justifications for downward departure . . . is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties."); <u>United States v. Johnson</u>, 964 F.2d 124, 128-130 (2nd Cir. 1992)(granting a departure and stating that "we are reluctant to wreak extraordinary destruction on dependants who rely solely on the defendant for their upbringing.").

## 2.   <u>Victim's Conduct.</u>

If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense.   <u>See</u> U.S.S.G. § 5K2.10.   Thus, victim misconduct is an encouraged ground for downward departure.   <u>See</u> <u>Koon v. United States</u>, 518 U.S. at  95, 101, 105.   Accordingly, if the particular guideline does not already take victim misconduct into account, then a downward departure is authorized.   <u>See</u> <u>id.</u> at 96.

The Policy Statement of U.S.S.G. § 5K2.10 states:

> [I]f the victim's wrongful conduct significantly contributed to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following: (1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant; (ii) The persistence of the victim's conduct and any efforts by the defendant to prevent the confrontation; (3) The danger reasonably perceived by the defendant, including the victim's reputation for violence; (4) The danger actually presented to the defendant by the victim; (5) Any other relevant conduct by the victim that substantially contributed to the danger presented; [and] (6) The proportionality and reasonableness of the defendant's response to the victim's provocation.

Id.

Logically, § 5K2.10 authorizes a departure even when the force the defendant uses in response to the provocation is excessive and unlawful. See Koon v. United States, 518 U.S. at 105; United States v. Cheape, 889 F.2d 477, 480 (3rd Cir. 1989)(noting that duress and coercion were grounds for departure under U.S.S.G. § 5K2.12, even though the duress and coercion defenses were unsuccessful at trial). If the response were lawful, the defendant would not be guilty, and the Guidelines would not come into play at all. In Koon v. United States, 518 U.S. 81 (1996), the defendant police officers assaulted the arrestee after the officers no longer perceived him to be a threat. See 518 U.S. at 86-87. Nevertheless, the Supreme Court found downward departure was appropriate on the basis of abuse in prison and successive prosecution. Moreover, "the provoking conduct need not immediately precede the offense behavior." United States v. LaVallee, 439 F.3d 670, 708 (10th Cir. 2006)(citing Koon v. United States, 518 U.S. at 104).

The Tenth Circuit, in United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994), overruled in part by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000), found that the victim's misconduct significantly contributed to provoking the defendant's stabbing and killing the victim. United States v. Tsosie, 14 F.3d at 1442. In that case, the defendant chased down his wife, who had left him the night before, and discovered her with another man with whom she had previously had

an affair.  <u>See</u> <u>id.</u> at 1439-40.  He grabbed a knife with a six-inch blade and ran after the man.  <u>See</u> <u>id.</u> at 1440.  The man stopped and swung his belt at the defendant, hitting the defendant in the nose.  <u>See</u> <u>id.</u>  The defendant swung his knife at the man several times.  <u>See</u> <u>id.</u>  One of the blows struck the man behind the knee.  <u>See</u> <u>id.</u>  They exchanged punches while on the ground.  <u>See</u> <u>id.</u>  The stabbing behind the knee eventually caused the man's death.  <u>See</u> <u>id.</u>

In <u>United States v. Yellow Earrings</u>, 891 F.2d 650, 655 (8th Cir. 1989), the United States Court of Appeals for the Eighth Circuit affirmed a § 5K2.10 downward departure.  In that case, during a party at the victim's home, while in the bedroom, the woman defendant refused the drunk male victim's request to have sexual intercourse with her.  <u>See</u> <u>id.</u> at 651.  The victim verbally abused the defendant and pushed her.  <u>See</u> <u>id.</u>  The defendant brushed past the victim, went into the kitchen, got a knife with a nine-inch blade, and stabbed the victim in the chest, puncturing the victim's lungs.  <u>See</u> <u>id.</u> The Eighth Circuit found that the district court had properly concluded the victim's verbal abuse, physical show of force, and public denigration of the defendant had substantially provoked the stabbing.  <u>See</u> <u>id.</u> at 653-654; <u>United States v. DeJesus</u>, 75 F.Supp.2d 141, 141-142, 144-147 (S.D.N.Y. 1999)(granting § 5K2.10 departure where the victim beat the defendant's pregnant girlfriend and threatened to kill the defendant; where the defendant, a gang "warlord," organized a group of gang members, one with a gun, one with a knife, and another with a chain, and they set out toward the victim's house; and where, had they not been stopped, the group would have used violence and people would have been hurt).

### 3.  <u>United States v. Booker.</u>

In <u>United States v. Booker</u>, the Supreme Court of the United States found that one of the principal constructs of the Sentencing Guidelines was unconstitutional.  The Supreme Court severed the mandatory portions of the Sentencing Guidelines, ruling that 18 U.S.C. § 3553(b)(1) and 18

U.S.C. § 3742(a) must be severed from the remainder of the Sentencing Reform Act.  The Court's remedy renders the Sentencing Guidelines advisory.

Pursuant to United States v. Booker, the guideline range is one of a number of factors that a sentencing court must consider in determining an appropriate, individualized sentence. Specifically, the court must consider the provisions of 18 U.S.C. § 3553(a).  A sentencing court must now impose the sentence after full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

The Supreme Court's holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  543 U.S. at 245-46.  Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences."  United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant."  Id.

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, No. 06-5754, 2007 U.S. LEXIS 8269, at *21 (U.S. June 21, 2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate.");  United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due

consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines;  (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  18 U.S.C. § 3553(a) further states: "The court shall impose a sentence sufficient but not greater than necessary to comply with" the above set forth factors.

The Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id.  Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007).

On the other hand, criminal sentences that vary materially from the properly calculated

guideline sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence.  See United States v. Bishop, 469 F.3d 896, 907 (10th Cir. 2006).

## ANALYSIS

While Eriacho has pointed to two factors that authorize a downward departure, the Court does not believe either factor, taken alone or together, is so significant in this case that a downward departure is warranted under the facts and circumstances.  Nevertheless, the Court believes that the resulting guideline sentence is too high.  Accordingly, the Court will vary from the advisory guideline sentence to produce a reasonable sentence of 27 months.

### 1.    Family Ties and Responsibilities.

Eriacho contends that the ordeal has already been difficult enough for her siblings.  She argues that a lengthy period of incarceration for her will have further destructive effect on them. Eriacho contends that a lengthy period of incarceration for her will be punishment for all her siblings.

While it appears that Eriacho, as an older sister, plays an important role in the life of her family, the Court does not believe that she plays a significantly different role that other siblings that the federal courts must incarcerate on a frequent basis.  She appears to be a maturing young lady that is beginning to spend periods of time out of town on her own, and while still very much connected to her family, she still has her own life.  While her family and other siblings will miss her, the Court is not convinced that the other siblings will be deprived financially or that they will suffer

-14-

significantly greater emotional loss than other families that lose a sibling to incarceration.

Moreover, one of Eriacho's younger brothers has also been charged in this offense.  Thus, the family may suffer some further emotional loss with him, and there may be no impact on this younger brother from the incarceration of Eriacho.  There is no sound reason to downward depart for one of the primary participants in the offense that night when the family may suffer similar injury later in the younger brother's proceedings.

Based on the information provided to the Court, the Court does not believe that a downward departure based on Family Ties and Responsibilities is warranted in this case.  Even though such departures are authorized, the Court has trouble in this case discerning precisely what impact, if any, the removal of Eriacho from her family will have upon her younger siblings, especially the one also charged in this offense.  In any case, the Court chooses not to depart, because it does not believe that a departure for Family Ties and Responsibilities is warranted under the facts and circumstances here.

Unfortunately, the federal criminal justice system, with the punishment of incarceration for the defendant, has a daily material impact on the defendant's family.  The Court is having difficulty distinguishing this case from many others.  The case fits within the heartland of other federal court cases, does not present a factor of which the Guidelines has not adequately taken account, and does not present the family factor to such a significant extent that a departure is warranted.

Finally, given that a departure for Family Ties and Responsibilities is authorized under the guidelines, even if a departure were warranted under the facts and circumstances of this case, the Court would exercise its discretion not to depart.  Because the case involves a serious and permanent injury, and because the case's family factor remains in the heartland of cases that the federal court sees, the Court believes a lengthy incarceration is appropriate.  Eriacho's request for a departure on the basis of Family Ties and Responsibilities is thus denied.

2.      **Victim's Conduct.**

The assault guideline, U.S.S.G. § 2A2.1, does not take into account victim misconduct. Thus, a downward departure for victim's conduct is authorized for the offense in this case. The issue is whether such a downward departure is warranted under the facts and circumstances of the case.

Eriacho contends that her case is not a heartland assault case. Eriacho maintains that Daral Jake was the initial aggressor. It is true that Daral Jake physically attacked Eriacho. See PSR ¶ 98, at 22. The Court can also reasonably conclude that his conduct contributed to the offense behavior.

What is more uncertain is whether Eriacho would not have injured Daral Jake had he not attacked her that night. More specifically, it is unclear whether his attack was unprovoked. Daral Jake was home asleep when someone broke the glass on his car, and the only reason Daral Jake and his family were out at that time of night was because they were looking for who committed this property damage. See PSR ¶¶ 10, 14, 19, 20, at 5-7.

While there is no evidence that Eriacho or any other participants in the assault were involved in damage to the Jakes' property, the problems with the vandalism may explain why the Jakes' emotions were running high that night. Also, Eriacho and Daral Jake had some personal history with each other, with her having affection for Daral Jake and even crawling through a window of his home one night when she was drunk. See PSR ¶ 20, at 7. Eriacho also consumed alcohol before this incident. See PSR ¶ 28, at 9.

Eriacho left her residence with Derek W. to visit a friend. See PSR ¶ 29, at 9. On their way back home, Eriacho met the victim, Daral Jake, and Daral's father. See id. According to information provided in discovery material, the initial altercation occurred between Daral, his father, and Eriacho. See id. The information is consistent with the fact that Eriacho was struck first by

-16-

Daral. See id. The information also indicated, however, that Eriacho had the opportunity to leave the scene without further incident, but instead chose to return, and chase the victim down and assault him. See PSR ¶ 98, at 22.

On the record before the Court, the Court is not convinced that Daral Jake's wrongful conduct contributed significantly to provoking Eriacho's offense behavior. The Court is concerned that Eriacho's consumption of alcohol, and a lot of it, may have contributed more significantly to events that night than did Daral Jake's hitting her first. Eriacho is not a large woman, at only 5'3" and weighing only 120 pounds, but she drank fifteen beers within less than four hours before the incident. See PSR ¶ 28, 64, at 9, 17.

There appears to have been two altercations. There seems to be some lapse of time between this first altercation and the one in which Daral Jake was hurt. See PSR ¶¶ 11-12, 21- 22, 24- 25, 32-33, 98 at 5, 7- 8, 10, 22. The information available indicates that Eriacho had the opportunity to leave the scene without further incident. See PSR ¶ 98, at 22.

At one point, everyone appeared to have settled down, and begun to walk away from each other. See PSR ¶ 22, at 7. Instead of completely leaving the scene, Eriacho choose to return, chase the victim down, and assault him. See PSR ¶ 98, at 22. Based on the information available to the Court, it appears that Eriacho's response to being hit by Daral Jake was unreasonable in that there was a delay in time, there was a time to calm down emotionally and separate physically, and her response was not proportional to Daral Jake hitting her earlier. See PSR ¶¶ 11-12, 21- 22, 24- 25, 32-33, 98 at 5, 7- 8, 10, 22.

The Court is particularly concerned that Eriacho did not try to prevent the incident and that ultimately the assault resulted in Daral's permanent injury -- the loss of his eye. Eriacho had an opportunity to leave the area, avoid an altercation, and proceed home without further incident. See

-17-

PSR ¶ 98, at 22.  The Court also notes that the assault was four people against two, which indicated that Daral Jake was at higher risk.  See PSR at 24.

While a departure is authorized under the Guidelines, the Court concludes that a departure is not warranted under the facts and circumstances of this case.  The Court is having trouble squaring Eriacho's reaction with Daral Jake hitting her.  Because of the serious and permanent injury that she inflicted, the Court chooses not to depart, because a departure is not warranted under the facts and circumstances here.

Unfortunately, when young people drink large quantities of alcohol, they often do not act reasonably or proportionally to provocations or encounters with people for whom they may have strong emotions.  The criminal justice system is filled with those who have drunk heavily and then committed a crime of violence that is disproportionate to what they would have done if sober.  The Court is having trouble distinguishing Eriacho's case from many others that it and other federal courts see, and the Court thinks it is comfortably within the heartland of cases.  While Daral Jake's conduct may have contributed to the offense, it does not appear to have been a significant factor.

Finally, given that the guidelines authorize a departure, but that the facts and circumstances of this case do not warrant a departure, the Court will exercise its exercise its discretion not to depart.  Not only does the case remain in the heartland of cases that the federal courts see, and Daral Jake's conduct does not appear to be a significant contributing factor, but the resulting injury requires a serious punishment.  There does not appear to be a compelling reason to depart.  Given the seriousness of the injury, the precise cause of Eriacho's assault are less important in the overall calculus of factors that the Court must consider to arrive at a reasonable sentence.

Based on the information available, it appears to the Court that Eriacho's response to the incident between her and Daral was unreasonable and not proportional.  It therefore does not appear

to the Court that the Victim's Conduct, pursuant to U.S.S.G. 5K2.10, is an appropriate basis for departure. Accordingly, the Court will deny the request for a downward departure on the basis of victim's conduct.

### 3.   Combination of Factors.

Eriacho contends that, even if one of these two factors – Family Ties and Responsibilities, and Victim Conduct – standing alone would be insufficient to warrant a reduced sentence, together they provide a substantial basis for a lesser sentence. See United States v. Jones, 158 F.3d 492, 504-505 (10th Cir. 1998)(holding that departure may be based upon an aggregation of factors if the "district court made a global assessment that all of [the] factors, not in combination, but individually are present to an exceptional degree."); United States v. Bowser, 941 F.2d 1019, 1025 (10th Cir. 1991) (stating, "[b]ecause the relationship of the factors the court considered in determining the appropriate criminal history for defendant was carefully considered and explained by the district court, we conclude that use of this factor as part of the composite rationale for downward departure in defendant's criminal history was not error."). Neither factor appears very strong, alone or in combination. The Court does not believe that together they justify a downward departure.

### 4.   United States v. Booker and 18 U.S.C. § 3553.

Eriacho incorporates by reference her arguments for downward departures, contending that they also apply to a Booker analysis. This case involves an assault in which four individuals, including Eriacho, attacked the victim, Daral Jake, and hit him with a stick, resulting in the loss of his right eye. See PSR ¶ 35, at 10, 24. Daral received a permanent injury, and the Court has now assessed a 7-level increase for that injury. Pursuant to the plea agreement, however, the parties agreed that Eriacho is responsible for serious bodily injury, resulting in a 5-level increase. See PSR ¶ 46, at 13. The United States at the initial sentencing stated that it opposed a further reduction from

-19-

a 30-month sentence.  See Tr. at 14:7-15 (Gonzales).

The Court has carefully consider the resulting advisory guideline range.  In arriving at its sentence, however, the Court must not only take account of the Guidelines, but also other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.

While the Court believes that it has correctly calculated the Guideline sentence, and does not believe that a downward departure is appropriate, the Court does not believe that the punishment set forth in the advisory guideline is appropriate for Eriacho's offense.  While Eriacho deserves a greater sentence of incarceration than does White, because she damaged the eye, her intent and actions are difficult to distinguish from White's, yet the Guidelines recommend a sentence of over twice as long.  The Court has considered the kinds of sentences and range established by the Guidelines, and the Court believes that a sentence of 27 months is a better approximation of a reasonable sentence than the guidelines' advisory sentence.

White originally was in a 24 to 30 month range before the Court departed 2 levels for aberrant behavior.  The parties were contemplating about 6 months difference in sentences between White and Eriacho.  The advisory guideline sentence for Eriacho would give her 19 months more, more than three times the original contemplated differential.

The Court believes that a sentence of 27 months reflects, as it must, the seriousness of Eriacho's offense.  The Court believes that this sentence will promote respect for the law and provide just deterrence.  And because of recommendations that the Court will make to the Bureau of Prisons and because of the conditions of supervised release that the Court will impose, the Court believes that this sentence will afford adequate deterrence, protect the public, and provide Eriacho with some training, counseling, and care that she needs to deal with some of her problems, such as

-20-

her problem with alcohol.  In sum, the Court believes that a sentence of 27 months reflects each of the factors embodied in 18 U.S.C. § 3553(a) well and, for some factors, better than would the advisory guideline sentence.

The 27-month sentence is more reasonable for another reason.  The Court believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Act.  Furthermore, it does not introduce a disparity in sentencing between Eriacho and White that cannot be rationally explained.  A sentence of 27 months imprisonment is an appropriate and reasonable sentence because it is not greater than necessary to comply with the factors set forth in 18 U.S.C. § 3553(a)(2).

While the Court acknowledges that the victim and the United States want the original 30-month sentence negotiated in the plea agreement, the Court believes that, once it granted White a downward departure, the difference between their guideline sentences is too great.  While the Court does not believe that Eriacho is entitled to the downward departure White received, some lesser sentence from the guidelines is needed.  The Court believes that a 9-month differential --3 months more than originally negotiated but 3 less than the advisory guideline sentence -- is most appropriate in recognizing their different roles, but similar conduct.   While the Court recognizes that its view of a reasonable sentence varies from that of the Guidelines under the facts and circumstances of this case, the Court believes that a 27-month sentence will more effectively promote the sentencing goals in 18 U.S.C. § 3553(a) than the advisory guideline sentence.  Accordingly, the Court will grant the variance request, but because a lower sentence would not take full account of the seriousness of the injury, the Court will deny Eriacho's request for a lower sentence.

**IT IS ORDERED** that the Defendant's Downward Departure Motion is denied, but that the request therein for a variance from the advisory guideline sentence is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
Kenneth J. Gonzales
   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Margaret A. Katze
   Assistant Federal Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*